JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re PS ON TAP, LLC, *et al.*,

Reorganized Debtors.

GRILL CONCEPTS, INC., *et al.*,

Appellants,

v.

UNITED STATES OF AMERICA,

Appellee.

Case No. 2:25-cv-03494-MRA

**ORDER ON APPEAL [ECF 12]**

Before the Court is an Appeal of the United States Bankruptcy Court for the Central District of California's March 31, 2025, Order Denying Debtors' Motion in Bankruptcy Case No. 1:21-bk-10757-MB, filed by Appellants Grill Concepts, Inc. and Grill Concepts Services, Inc. ECF 12. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. ECF 20; *see* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the reasons stated herein, the Court **AFFIRMS** the Bankruptcy Court's decision.

## I.  BACKGROUND

This case arises from the 2021 bankruptcy of Grill Concepts, Inc. and Grill Concepts Services, Inc. ("Appellants"), who sought bankruptcy protection after their restaurant operations were impacted by the COVID-19 pandemic.  Appellee is the United States of America ("Appellee").

### A.  Bankruptcy and Plan of Reorganization

On April 28, 2021, the Appellants filed voluntary petitions for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.[1]  ECF 12 at 11.  Appellants formed a plan for reorganization (the "Plan") that structured the outstanding debts into three classes of claims, in order of priority: (1) trust fund, (2) non-trust fund, and (3) general unsecured claim.  ECF 13, Ex. 13 (ER 340).  Both the trust fund and the non-trust fund claims were due to be paid in full after four years, and after the priority claims were satisfied, general unsecured claims were to be paid on a pro rata basis.  *Id.*

On October 22, 2021, the creditors voted to support the Plan, and the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") confirmed the Plan.  *Id.*, ER 356.

### B.  The CARES Act and the Employee Retention Tax Credit

On or about January 21, 2022, the Appellants applied with the Internal Revenue Service ("IRS") for an Employee Retention Tax Credit ("ERTC").  *Id.*, Ex. 18.  Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat 281 (2020), provides that "eligible employers" who paid qualified wages to their employees in 2020 are eligible for an ERTC and could claim the ERTC

---

[1] On April 30, 2021, the Court entered and granted Appellants' motion to jointly administer Bankruptcy Case No. 1:21-bk-10757-MB (the "Bankruptcy Action") and a collection of other cases, designating PS on Tap (Case No. 1:21-bk-10757-MB) as the lead case.  *Id.*, ER 12.  The other jointly administered cases are Bankruptcy Case Nos. 1:21-bk-10778-MB;  1:21-bk-10759-MB;  1:21-bk-10760-MB;  1:21-bk-10761-MB;  1:21-bk-10779-MB;  1:21-bk-10762-MB;  1:21-bk-10763-MB;  1:21-bk-10781-MB; and 1:21-bk-10764-MB.  *Id.*

against applicable employment taxes. *See* 134 Stat 281 § 2301(a) & (b)(1) & (2); 26 U.S.C. § 3134(a). Where the amount of credit due exceeded the amount paid in employment taxes for "any calendar quarter, such excess shall be treated as an overpayment that shall be refunded under Sections 6402(a) and 6413(b)." CARES Act § 2301(b)(2) & (3); 26 U.S.C. § 3134(b)(2) & (3).

Appellants applied for the ERTC credit for the first, second, and third quarters of 2021. ECF 14, Ex. 18 ¶¶ 5-6. In April 2023, the IRS approved the ERTC application but withheld approximately $1.4 million of the ERTC as a setoff to pay down the unpaid taxes, a general unsecured claim, ahead of the trust fund portions of the debt. *Id.* ¶ 8; ECF 12 at 8. On March 15, 2024, the Appellants moved the Bankruptcy Court to enforce the Plan against the IRS and object to the IRS's most recently filed proof of claim, which reflected the setoff. ECF 14, Ex. 17 (ER 601). On March 31, 2025, the Bankruptcy Court denied the Appellants' motion and overruled the objection. ECF 15, Ex. 32 (ER 629).

On June 11, 2025, Appellants appealed to this Court, arguing that the Bankruptcy Court erred in denying their motion, as the setoff violated the terms of the Plan and improperly diverted funds to general unsecured claims without regard to the Plan's priority scheme or pro rata distribution mechanism. ECF 12 at 7–8. Appellee opposed (ECF 17), and Appellants replied in support (ECF 18).

## II.    JURISDICTION AND STANDARD OF REVIEW

Appeals from a final judgment of a bankruptcy court are heard by a bankruptcy appellate panel or, when a party elects, by a district court for the judicial district in which the bankruptcy judge is serving. 28 U.S.C. § 158(a), (c)(1). Appellants elected to have their appeal heard by this Court. ECF 12 at 9.

When reviewing a bankruptcy court's decision on appeal, a district court reviews the bankruptcy court's legal conclusions *de novo* and its factual conclusions for clear error. *In re Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004). "[T]he standard of review for a mixed question depends on whether answering it entails primarily legal or factual work." *U.S.*

*Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 388 (2018).[2]

The *de novo* standard of review requires a reviewing court to "consider a matter anew, as if it has not been heard before, and as if no decision had been rendered previously." *In re Smith*, 435 B.R. 637, 643 (B.A.P. 9th Cir. 2010). The clear error standard of review is highly deferential, and it requires the district court to leave the bankruptcy court's conclusion in place unless the district court has a "definite and firm conviction" the bankruptcy court made a mistake. *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015).

## III.    DISCUSSION

The questions before the Court are (1) whether the application of the setoff violated the priority scheme under the Plan, and (2) whether the application of the setoff violated the Bankruptcy Code.

### A.    The Setoff Under the Confirmed Plan

"A Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts." *Miller v. U.S.*, 363 F.3d 999, 1004 (2004) (citing *Hillis Motors, Inc. v. Haw. Auto. Dealers Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993)). "[B]ecause there is little need for a nationally uniform body of law regarding the interpretation of Chapter 11 plans and because state law is regularly incorporated into bankruptcy law, state law constitutes the federal rule of decision" and governs the Court's interpretation of the Plan. *Hillis Motors*, 997 F.2d at 588. Here, by the express terms of the Plan, California law is applicable. ER 340 at 32.

---

[2] Appellee urges the Court to apply an abuse of discretion standard as to the Bankruptcy Court's decision to allow the setoff by relying on *In re Gould*, 401 B.R. 415, 420–21 (B.A.P. 9th Cir. 2009), *aff'd*, 603 F.3d 1100 (9th Cir. 2010). ECF 17 at 8. However, the bankruptcy court in that matter used its discretion in "disallowing the IRS's setoff under § 553 based on the equities of the case[,]" while the resolution of the setoff issue here relies on contract interpretation, a legal question. *Gould,* 401 B.R. at 431.

It is well-established that under California law, "[t]he interpretation of a contract is a judicial function." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1125 (2008) (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39–40 (1968)).  In exercising this function, "the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed." *Id.* at 1126 (quoting Cal. Civ. Code § 1636).  In general, ascertaining the parties' objective intent is "a legal question determined solely by reference to the contract's terms." *Id.*

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638; *see also id.* § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.").  The court must also "consider[] the contract as a whole and interpret[] the language in context, rather than in isolation." *W. Pueblo Partners, LLC v. Stone Brewing Co., LLC*, 90 Cal. App. 5th 1179, 1185 (2023) (citing Cal. Civ. Code § 1641).  The court generally may not consider extrinsic evidence to vary or contradict the clear and unambiguous terms of a written, integrated contract. *See* Cal. Civ. Code § 1856(a).  "The proper interpretation of a contract is disputable if the contract is susceptible of more than one reasonable interpretation, that is, if the contract is ambiguous." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114 (2007).  Lastly, it is well-established that courts construe an ambiguity against the drafter. *Zipusch v. LA Workout, Inc.*, 155 Cal. App. 4th 1281, 1287 (2007).

Appellants argue that under the Plan, a setoff is unambiguously a form of involuntary payment, and as such, the Bankruptcy Court erred in concluding the setoff was not a payment subject to the Plan.  ECF 12 at 23–28.  Appellees argue the setoff was not a "payment" under the Plan, but an "overpayment, in the form of a refundable tax credit, on the taxpayer's account."  ECF 17 at 19.  The Court reviews this issue *de novo*.

The relevant language in Article 3 of the Plan states:

**3.03 Priority tax claims**: … Each holder of a priority tax claim ***will be paid*** in full with required statutory interest of 3.25% per annum or such other

> interest required by law (commencing on the Petition, Date) amortized over four (4) years and paid quarterly with such *payments* earmarked to first satisfy the trust fund portion of such allowed tax claims. Debtors have the right at their sole discretion to pay down or pay off this claim earlier to reduce interest expense.
>
> **Class 3C: Other General Unsecured Claims**: … Allowed general unsecured claims whose claims are not satisfied in Classes 3A-3B *will receive a pro-rata share* of the Debtors' actual Disposable Net Income for the four (4) year period following the Effective Date of the Plan, to be paid annually *after the claims of the other classes are first satisfied*.

ER 340 at 5, 6 (emphases added).  As such, the Court must determine whether the setoff constitutes a "payment" under 3.03 and consequently subject to the priority scheme of the Plan.

The relevant language of the Plan creates a quarterly schedule for payments, a four-year deadline, and a right, held by Appellants, to pay down claims earlier, implying the provision contemplated affirmative payments by Appellant.  ER 340 at 5.  Such terms would be rendered inapplicable, or even unworkable, if intended to apply to anything other than affirmative payments, including the setoff, as Appellants now argue.  The cited provision makes no references to "setoffs" or "offsets."  In fact, courts describe setoffs as movement of debt *without* payment: "[t]he right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (citations omitted).

While the Court reviews this issue *de novo*, it finds the Bankruptcy Court's analysis on the topic useful.  The Bankruptcy Court noted that the Plan appeared to point only to the timing and amount for "payments" to be made by Appellants. ER 629 at 26.  The court cited the ordinary and popular meanings of pay and payment. *See id.* ("[The] leading definition of 'pay' is 'to give money to in return for goods or services;' [the] definition of 'payment' is 'the act of paying or the state of being paid.'").  Noting that a setoff "does not

involve the payment of money but rather the netting of mutual obligations," the court concluded that "[t]o the extent the exercise of a setoff right may be arguably viewed as an *effective* or *figurative* payment because it results in the discharge of an obligation, use of the term 'payment' in the Plan is, at best, ambiguous," and that such ambiguity must be construed against Appellant, as the drafter of the Plan. ER 629 at 27. The Court agrees.

Appellants argue a setoff is considered an "involuntary payment," clearly included within the priority scheme of payments outlined in the Plan. ECF 12 at 21–23. In support, Appellants cite several cases that liken setoffs to involuntary payments.[3] The Court finds these cases inapposite. Appellees do not contest that a setoff may be considered an "involuntary payment" in some contexts. *See* ECF 17 at 14 ("An offset is considered an involuntary payment, and the IRS can apply that payment to any tax period it wishes."). As the Bankruptcy Court noted, a setoff does result in the discharge of financial obligation, the context in which a setoff is frequently discussed as an "involuntary payment" in Appellant's cited cases.

But whether the IRS may designate a setoff as an "involuntary payment" for purposes of determining tax liability is irrelevant to whether the setoff here may be considered a "payment" under the specific language of the Plan to which these parties agreed. Appellants do not cite any cases supporting the interpretation of similar language in such a manner. As discussed above, the plain meaning of the Plan appears to

---

[3] Appellants cite several cases in other districts, which discuss a setoff as an "involuntary payment," which allows the IRS "free[dom] to allocate the payment in the way that will maximize recovery of the taxes due," as opposed to a "voluntary payment," where a taxpayer may "have the discretion to direct how [the payment] is applied," *see, e.g., In re Ewing*, 400 B.R. 913, 916 (Bankr. N.D. Ga. 2008), or discuss a setoff as an "involuntary payment" in other contexts, *see, e.g., In re Strotkamp*, No. 90-13772, 2001 WL 34674679, at *4 (Bankr. D. Kan. Oct. 16, 2001) (determining whether a setoff constituted funds which could be disgorged); *Proctor v. United States Dep't of Educ.*, No. 2:02-CV-254, 2005 WL 8162422, at *7 (S.D. Ohio Mar. 24, 2005) (evaluating a challenge to the garnishment of wages for unpaid student loans).

contemplate only affirmative payments by Appellants, or is, at best, ambiguous as to the application of such terms to a setoff.

Appellants further support their argument that the Plan's priority scheme unambiguously includes setoffs by citing to a June 20, 2023, fax from Rhonda Roberts ("Roberts"), an Insolvency Specialist at the IRS. In the fax, Roberts states:

> I have done some research on the issue of the pre-petition refunds being offset to pre-petition debts at the discretion of the IRS. We are allowed to offset those payments in the best interest of the Government. I reviewed the following case (In RE: Technical Knockout Graphics Inc., a California Corporation which was Appealed. This case was trying to designate tax payments made prior to confirmation of its reorganization. The debtor was denied the motion. Under a Confirmed Plan the debtor can designate the Payments made UNDER THE PLAN but not for payments made before confirmation. Well, the payments on the offset years were made BEFORE confirmation which you can verify by reviewing the Account Transcripts.

ECF 12 at 34–35 (citing ER 601-5 at 105). Though Roberts has specialized knowledge as an Insolvency Specialist at the IRS regarding the matter, her statement reflecting her research is minimal evidence of the parties' intent when voting for the Plan. This fax, occurring nearly two years after the Plan was confirmed, appears to be an internal attempt by the IRS to understand and comply with governing bankruptcy law, and is not determinative as to the parties' intent at the time of the vote for the Plan.

### 1. *United States v. Energy Resources Co., Inc. and Subsequent Cases*

Appellants rely heavily on *United States v. Energy Resources Co., Inc.*, 495 U.S. 545 (1990), to argue that the Plan applies to the setoff and dictates its application. *See* ECF 12 at 21–22. In *Energy Resources*, the Supreme Court considered whether a bankruptcy court had the authority to order the IRS to treat tax payments as trust fund payments, specifically where the bankruptcy court determines such an order is necessary for the success of a reorganization plan. *Energy Res.*, 495 U.S. at 546. There, a trustee sent an affirmative payment to the IRS and requested the IRS apply the money to Energy

Resources' trust fund tax debt. *Id.* at 547. The IRS refused, and the trustee "successfully petitioned the bankruptcy court to order the IRS to apply the money to the trust fund tax liabilities." *Id.* at 547-48. The Court determined that the bankruptcy court had the authority to order the IRS to apply the payments to trust fund tax liabilities. *Id.* at 548-49. Appellants argue that under *Energy Resources*, "a debtor's plan provision that prioritized the trust fund claim is enforceable against involuntary payments." ECF 12 at 22.

But *Energy Resources* does not govern the issue at hand. As discussed above (*supra* n. 3), the "voluntary" versus "involuntary" payment distinction is an internal designation by the IRS, which dictates whether the taxpayer or the IRS has the authority to determine to which tax liability the payment will apply. *See also Energy Resources*, 495 U.S. at 548. In *Energy Resources*, the Supreme Court discussed whether an *affirmative payment* made by a trustee on behalf of the debtor during bankruptcy proceedings constituted an involuntary or voluntary payment, and it ultimately concluded the bankruptcy court had the authority to dictate how the IRS applied the payment regardless. *Id.* at 548-49. The Court in *Energy Resources* had no occasion to consider whether a setoff of a revocable tax credit constitutes a payment, voluntary or otherwise. Further, the Supreme Court held that a bankruptcy court has the authority to *order* the IRS to apply certain funds to specific tax liabilities. *Id*. Here, the Bankruptcy Court issued no such order, and Appellants provide no authority compelling the Court to find that this constitutes a reversible legal error.

*In re Deer Park, Inc.*, which Appellants similarly cite for support, also addressed a Bankruptcy Court's order requiring the IRS to apply *affirmative payments* to certain liabilities in keeping with a confirmed plan.[4] 10 F.3d 1478, 1480-81 (9th Cir. 1993).

---

[4] Appellant's argument regarding *Energy Resources* and *In re Deer Park* was raised in the Bankruptcy Court proceedings and evaluated by the Bankruptcy Court. *See* ER 629 at 29. The Bankruptcy Court similarly concluded that "[t]hese cases did not involve setoff rights under [§] 553 or the interpretation of language in a confirmed chapter 11 plan purporting to alter those rights. They are not controlling here." *Id.*

Appellants cite several other cases to support the argument that the setoff must be applied in accordance with the Plan's priority scheme. The Bankruptcy Court correctly addressed, and rejected, the application of these cases.

In *In re Moore*, a bankruptcy court relied on *Energy Resources* to order the IRS to apply a setoff in compliance with the priority scheme of a confirmed plan. 200 B.R. 687, 690 (Bankr. D. Or. 1996). But as the Bankruptcy Court acknowledged in this case, *In re Moore*'s analysis of *Energy Resources* and *In re Deer Park* was "cursory and unpersuasive," and the court in *In re Moore* "failed to consider that those appeals were from plan confirmation orders, did not involve rights of setoff, and did not require those courts to consider the adequacy of language purportedly modifying such rights." ER 629 at 29-30.

Appellants also cite *In re Gordon Sel-Way*, 239 B.R. 741, 750-52 (E.D. Mich. 1999), aff'd, 270 F.3d 280 (6th Cir. 2001), *In re Continental Airlines*, 134 F.3d 536, 541-42 (3d Cir. 1998),) and *U.S. on behalf of I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983), which each generally included a finding that the IRS's setoff rights did not survive or were otherwise limited by a confirmed plan dictating priority. *See* ECF 12 at 24-27. The Bankruptcy Court correctly determined these cases were factually distinct from the matter at hand and at odds with controlling Ninth Circuit precedent under *In re De Laurentiis*, "which holds that confirmation of a plan, and the discharge of claims thereunder pursuant to Bankruptcy Code [§] 1141, must yield to the right of a setoff recognized under [§] 553." ER 629 at 31-32 (citing *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1274-77 (9th Cir. 1992)).

The Bankruptcy Court similarly distinguished *In re Beck*, 2016 WL 399455 (B.A.P. 9th Cir. Feb. 1, 20160). *See* ER 629 at 31. In *Beck*, a lender's lien was considered voided where a valuation motion and a confirmed plan treating the lien as an unsecured claim were served on the lender. *Id.* (citing *In re Beck*, 2016 WL 399455, *16). The Bankruptcy Court explained that *In re Beck* was "inapposite," as "the motion in *Beck* disclosed an express

intent to strip the lender's lien.  The Plan here discloses no intent to abrogate or condition the IRS' setoff rights." *Id.*

The Court agrees with the Bankruptcy Court's analysis of this case law.  As such, the Court declines to find Appellants' cited cases require a finding that the Plan dictates application of the setoff.

### 2. *Res Judicata*

Appellants assert that the Plan's treatment of a creditor's claim and its priority scheme are subject to res judicata and binding upon all creditors.  ECF 12 at 19–21.  The Court agrees that the Plan is binding on the IRS and that it is entitled to res judicata effect. *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect.").

However, res judicata does not "preclude parties from subsequently asserting their rights unless specific language in the plan clearly and *unambiguously* disposed of those rights."  *Solimano Framing Group LLC v. Pier Constr. & Dev., LLC* (*In re Solimano Framing Group, LLC*), 664 B.R. 803, 813 (B.A.P. 9th Cir. 2024) (emphasis in original). Here, as discussed in detail, *supra* Section III(A), the Plan does not unambiguously dispose of Appellee's right to recover a setoff outside of the Plan's priority scheme.  Accordingly, while the Plan is binding as res judicata, Appellee can still assert its rights, and the Court can still interpret the contract to resolve the matter.

The Court concludes that the setoff was not carried out in violation of the Plan and consequently affirms the Bankruptcy Court's decision on this issue.

### B. The Setoff Under the Bankruptcy Code

Appellants additionally argue that (1) the Bankruptcy Court erred in its interpretation of 11 U.S.C. § 553 to allow the IRS to determine how the setoff was applied, and (2) the exercise of the IRS's setoff rights violated the general priority scheme of the Bankruptcy Code.  *See* ECF 12 at 28-33.

-11-

### 1.    *The Bankruptcy Court's Application of 11 U.S.C. § 553*

11 U.S.C. § 553(a) provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

The Bankruptcy Court determined the setoff was subject to § 553, which not only preserves the right of setoff in bankruptcy, but provides restrictions on that right as well, including a requirement that each debt or claim must arise prior to the filing of the bankruptcy petition. ER 629 at 9. Appellants argued the ERTCs "arose" after the filing of the petition, and therefore the setoff was barred. *Id.* at 11. The Bankruptcy Court disagreed, concluding that regardless of when the *tax credits* arose, the ERTCs were pre-petition obligations, as they were tied to Appellants' activities (*i.e.*, the payment of qualified wages) during pre-petition fiscal quarters. *Id.* at 13. Appellants made various other challenges to the applicability of § 553 to the setoff, each of which the Bankruptcy Court addressed and determined were without merit, ultimately concluding that the IRS was entitled to the setoff under § 553 and did not waive this right. *Id.* at 16-23.

On appeal, Appellants concede the IRS is entitled to a setoff under § 553, but argue that in relying on § 553 as the authority allowing the IRS to offset the ERTC against the unsecured portion of its claim, the Bankruptcy Court mistakenly conflated a creditor's right to *preserve* a setoff under § 553 with the right to determine how to *apply* the setoff, which is properly governed by the Plan. ECF 12 at 32–33. This argument is now moot, because the Court has found that the Plan does not govern setoffs or how the setoff applies. *See supra* Section III(A). Even if the Court were to reach the merits of this argument, the Court is not persuaded.

-12-

Appellants provide little support for this narrow reading of § 553.  Appellants cite *Energy Resources* and *Norton*, which the Court has already addressed and distinguished above.  *See supra* Section III(A)(1).  Other support is provided for the assertion that "§ 553 does not create a right of setoff, but merely preserves a creditor's setoff rights under applicable nonbankruptcy law," which is not disputed by the parties.  ECF 12 at 32 (citing *In re Luz Int'l, Ltd.*, 219 B.R. 837, 843 (B.A.P. 9th Cir. 1998)); ECF 17 at 16.

Absent precedent to the contrary, the Court does not find this interpretation of § 553 compelling.  The Ninth Circuit has endorsed a presumption in favor of the enforcement of setoff rights under bankruptcy law.  *See De Laurentiis*, 963 F.2d at 1277.  In *De Laurentiis*, the Circuit court held that the discharge of debts under § 1141 did not take precedence over § 553's preservation of the setoff right, reasoning that:

> If section 1141 were to take precedence over section 553, setoffs would be allowed under Chapter 11 only where they were written into a plan of reorganization.  Section 553 would then be largely superfluous, since a setoff could be written into the reorganization plan even without section 553.  A reading of section 553 which renders it meaningless should be highly suspect.

*Id.*  It is clear the Ninth Circuit interprets setoff rights to be preserved under § 553 regardless of whether the setoff is provided for in a confirmed plan or not.  For the *application* of this setoff to not be afforded similar treatment appears arbitrary and unnecessarily complex and is at odds with the Ninth Circuit's reading of § 553 regarding setoffs, which have a "venerable" history in bankruptcy law.  *Id.* at 1277.

In discussing the right to setoff, the Ninth Circuit acknowledged that it would likely place a creditor at an advantage as compared to the strict application of a priority scheme: "Unsecured creditors generally have to settle for receiving a small percentage of the sum they are owed, sometimes as little as a few cents on the dollar.  The creditor who asserts a setoff, by contrast, is paid 100% of its claim (at least up to the value of the setoff)."  *De Laurentiis*, 963 F.2d at 1277 n. 18.  As such, the Circuit court acknowledged that the

exercise of a setoff right may result in the discharge of an unsecured debt which otherwise would not have been paid in full. Nevertheless, the Ninth Circuit found the right protected under § 533. The Court sees no reason to create a different standard than the rule articulated in *De Laurentiis* for the *application* of a setoff.

Whether a confirmed plan may *explicitly* alter a creditor's rights with respect to the application of the setoff is not the issue before the Court, as the Court does not read the Plan to contain such a provision. As such, Appellants' argument that § 553 fails to specify which of several classes of outstanding debt a setoff must be applied to, and consequently does not supplant the Plan's prioritization, is unavailing.

For all these reasons, the Court affirms the Bankruptcy Court's determination that the setoff was permitted, as exercised, under § 553.

### 2.    The Setoff Under the Bankruptcy Code's Priority Scheme

Finally, Appellants argue the IRS's application of the ERTC grant against the unsecured claims violated the fundamental principles of the Bankruptcy Code that general unsecured claims cannot be paid ahead of priority claims and that all general unsecured creditors must be treated equally and share pro rata in any distribution. ECF 12 at 28–32. As established above, rights of setoff are preserved under § 553, which is "intended to control notwithstanding any other provision of the bankruptcy code," even where such setoff rights are not explicitly accounted for in a confirmed plan. *See De Laurentiis*, 963 F.2d at 1277. Appellants provide no binding precedent which requires the Court to find the setoff violated the Bankruptcy Code. *See generally* ECF 12, 18.

//

//

//

//

//

//

-14-

**IV.    CONCLUSION**

For the foregoing reasons, the Order of the United States Bankruptcy Court for the Central District of California, entered March 31, 2025 (ER 629), is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: March 30, 2026

_____
MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE

-15-